## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Wayne Auten, *et al.,*

      **Plaintiffs,**

-V-
                                **Case No. 2:05-cv-0040**
                                **Judge Michael H. Watson**

Paula Brooks[1], *et al.,*

      **Defendants.**

### OPINION AND ORDER

Plaintiffs assert defendants failed to pay them overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1) and the Ohio Minimum Fair Wage Standards Act ("MFWSA"), Ohio Rev. Code § 4111.03(A). Plaintiff Wayne Auten additionally contends defendants retaliated against him for engaging in protected activity by terminating his employment, in violation of 29 U.S.C. § 216(b) and Ohio Rev. Code § 4111.13(B). This matter is before the Court on defendants' motion for summary judgment (Doc. 38). For the reasons that follow, the Court grants defendants' summary judgment motion.

### I. Facts

Plaintiffs, Wayne Auten and Murline Featherstone, are individual citizens of the State of Ohio. They both worked for the Franklin County Public Facilities Management

---

[1] Paula Brooks is substituted for Arlene Shoemaker pursuant to Fed. R. Civ. P. 25(d)(1).

2:05-cv-0040

("PFM") department. Defendants are the Franklin County Board of Commissioners; the individual Commissioners, Paula Brooks, Dewey Stokes, and Mary Jo Kilroy. Plaintiffs sue them in their official capacities only.

## A. Facts related to overtime

Wayne Auten started working as an electrician for PFM on June 22,1987. His duties involved installation, repair and maintenance of electrical equipment.

Murline Featherstone began working as a custodian for the Franklin County Lands and Buildings Department on July 12, 1982. She eventually became a member of the housekeeping staff at PFM. She performed custodial and housekeeping duties at the County Courthouse complex.

Both Auten and Featherstone earned hourly wages. They both used a time clock to punch their time cards at the start and end of their shifts.

Throughout the relevant time period[2], plaintiffs' employment was subject to a collective bargaining agreement which provided in part, "[e]mployees who work overtime shall have the option of electing to receive compensatory time in lieu of overtime pay." The employee Handbook and Work Rules contained identical provisions. Defendants have thus submitted evidence showing during the statutory period, overtime pay was available to plaintiffs upon request instead of compensatory time. (See also Raphael Dep. at 16, 18, 20, and 23).

Auten claims his immediate supervisor, Tom Byrne, his foreman, Jim Suver, their

---

[2] For reasons explained below, the Court finds that no FLSA violation occurred. If it had been called upon to do so, the Court would have found that any violation of the FLSA was not willful. 29 U.S.C. § 255(a). The relevant statute of limitations period is therefore two rather than three years. Id.

superior, Craig Raphael and Director Marianne Barnhart all told him overtime pay was not available and he could receive only compensatory time off for working overtime because there was no money in the budget for overtime pay. Auten Aff. ¶ 10. In his deposition, however, Auten testified that he never spoke with Barnhart about the subject. (Auten Dep. at 170). In any event, Auten does not indicate when these statements were made. Similarly, Featherstone alleges supervisor Steve Caudill or Assistant Director Carolyn Bethel told her overtime work in the garage was paid by compensatory time off only. Featherstone was unable to recall which of the two individuals made the comment or when it was made.

Both plaintiffs concede they were properly paid for all of the regular hours they worked. (Auten Dep. Vol. I at 83-84, 132; Featherstone Dep. at 99). Both plaintiffs also admit they received either compensatory time off or overtime pay for all of the overtime hours they worked. (Auten Dep. Vol. I at 84-85; Featherstone Dep. at 100-01).

Auten alleges he complained to his immediate supervisor, Byrne, and his foreman, Suver, about having to work overtime without receiving overtime pay. (Auten Aff. ¶ 17). It is undisputed, however, that he never brought the matter to the attention of Director Marianne Barnhart or other higher ranked supervisors. (Auten Dep. Vol. I at 170). Featherstone never complained about overtime policy, deciding instead to "let it go." (Featherstone Dep. at 115-16). When Featherstone finally inquired about overtime pay, she was told she needed only to fill out a from to receive overtime pay rather than compensatory time off. (Featherstone Dep. at 103). Neither plaintiff attempted to grieve the overtime issue through their union, AFSCME Ohio Council 8 Local 2049. (Auten Dep. at 195-97; Featherstone Dep. at 116, 126-30).

## B. Facts related to alleged retaliation

Auten asserts in his affidavit he voiced his complaints about overtime to his supervisor, Ton Byrne and his foreman, Jim Suver on several occasions. Auten does not indicate when he voiced his complaints.

In the summer of 2003, Auten received a five-day suspension for reporting to work under the influence of alcohol. (Auten Dep. Vol. I at 185). Plaintiff apparently had a blood-alcohol level of .0129 at work. (Auten Dep. Vol. I, Exhibit 15 at 6). Under the collective bargaining agreement, the next disciplinary step was termination.

On July 10, 2003, plaintiff was involved in a loud altercation with co-worker Steve Ham while working at the County Morgue. At least two witnesses to the incident stated that Auten used profanity. Auten acknowledged that he was loud. Ham apparently received a three-day suspension as a result of the incident.

Plaintiff was involved in another incident on August 29, 2003. During working hours on that day, plaintiff went to the nineteenth floor of the Franklin County Courthouse. At the time, two individuals were standing outside of the door of Carrie Workman's office, talking with her. When plaintiff arrived, he entered Workman's office and slammed the door behind him. Witnesses heard Auten yelling at Workman. When Auten left Workman's office, he was observed yelling, "You disgust me!" Workman told an investigating security officer Auten was upset because she had given someone a ride to Auten's house or a friend's house. Auten and Workman had been romantically involved before the incident. Auten married Workman in September 2004. When Auten was first asked about the incident, he denied he had been on the nineteenth floor

of the Courthouse on the date in question.

A pre-disciplinary hearing on the two incidents was held on September 19, 2003. On September 29, 2003, the hearing officer issued a report in which she opined there was sufficient evidence in the record to provide a basis for removing Auten. Director Barnhart recommended removal. On October 14, 2003, the Commissioners voted unanimously to remove Auten from his employment.

Auten filed the instant action in the Franklin County Court of Common Pleas on December 16, 2004. Defendants removed the action to this Court on January 13, 2005. Featherstone was added as a plaintiff in this case upon the filing of the amended complaint on August 29, 2005. The amended complaint asserts the following claims:

1.    Failure to pay overtime compensation in violation of the FLSA;

2.    Failure to pay overtime compensation in violation of the MFWSA; and

3.    Unlawful retaliation in violation of the FLSA and the MFWSA.

## II. Summary Judgment

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to

establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Id.* Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford &* Co., 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257).

The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (*quoting Matsushita*, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## III. Discussion

### A. Overtime Claims

Plaintiffs bring their overtime claims under the federal FSLA and Ohio's MFWSA.

Defendants maintain plaintiff received compensatory time off in lieu of overtime payment accordance with the FLSA, and, in any event, plaintiffs had the choice of receiving overtime pay instead of compensatory time throughout the relevant period.

The FLSA provides in part as follows:

> Except as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The MFWSA contains an analogous provision. *See* Ohio Rev.

Code § 4111.03(A). The FLSA also provides:

> Employees of a public agency which is a State, a political subdivision of a State, or an interstate governmental agency may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory

> time off at a rate not less than one and one-half hours for each hour of
> employment for which overtime compensation is required by this section.

29 U.S.C. § 207(o)(1). The FSLA sets limits on the provision of compensatory time in

lieu of pay:

> A public agency may provide compensatory time under paragraph (1) only
> –
> (A)    Pursuant to –
> * * *
> > (ii)    in the case of employees not covered by subclause (i), an
> > agreement or understanding arrived at between the
> > employer and employee before the performance of the
> > work[.]

29 U.S.C. § 207(o)(A)(ii). The Code of Federal Regulations states, in part:

> An agreement or understanding may be evidenced by a notice to the
> employee that compensatory time off will be given in lieu of overtime pay.
> In such a case, an agreement or understanding would be presumed to
> exist for purposes of section 7(o) with respect to any employee who fails
> to express an unwillingness to accept compensatory time off in lieu of
> overtime pay.

29 C.F.R. § 553.23(c). These provisions apply to Ohio's MFWSA through Ohio Rev.

Code § 4111.03(A). *See also Briscoe v. Columbus Metropolitan Area Comm. Action*

*Org.,* No. 81AP-887,1982 WL 4028, at * 3 (10th Dist. Mar. 9, 1982)("By virtue of R.C.

4111.03(A), Ohio defers to federal regulations and case law for the determination of

eligibility for overtime compensation.").

Defendants argue they provided plaintiffs compensatory time pursuant to an

agreement or understanding in accordance with 29 U.S.C. § 207(o). For this

proposition, defendants rely primarily upon *Baker v. Stone County, Mo.,* 41 F. Supp.2d

965 (W.D. Mo. 1999).

In *Baker,* the county commission adopted a personnel policy that gave the sheriff

and the county commission the choice of compensating overtime with pay or

compensatory time.  The employees of the sheriff's department brought suit against the

county commission, arguing the policy violated the FLSA.  The plaintiffs in *Baker* were

all aware at or near the time of hiring that compensatory time would be given for

overtime.  All but one of the employees accepted payment of compensatory time

without complaint.  The plaintiff who complained never refused a paycheck, nor did she

refuse to work overtime hours.  Based on these facts, the court in *Baker* held the

plaintiffs had agreed to accept compensatory time as payment for overtime work.  41 F.

Supp.2d at 995.

The court in *Baker* based its ruling in part on the decision of the Sixth Circuit

Court of Appeals in *Ariens v. Olin Mathieson Chem. Corp.,* 382 F.3d 192 (6th Cir. 1967).

The plaintiffs in *Ariens* were firefighter-guards employed at an ammunition plant under

an Army contract.  They filed an FLSA action complaining, in part, the defendant failed

to compensate them for time spent sleeping at the factory.  The district court entered

judgment in favor of the employer.  The Sixth Circuit affirmed, observing:

> [W]e are of the opinion there was a meeting of minds resulting in a valid
> agreement that plaintiffs would not be paid for sleeping time. The work
> schedule was explained in the pamphlet given to each man before he
> commenced work. The men found out about their work schedule on their
> first day of duty. The work schedules were posted and plaintiffs continued
> throughout the time in question to accept paychecks which excluded
> sleeping time from hours worked. Certainly, this was sufficient to
> constitute an implied agreement between the parties within the meaning
> of the interpretative bulletin.

*Ariens,* 382 F.2d at 197.

A similar result was reached in *Smith v. Upson County, Ga.,* 859 F. Supp. 1504

(M.D. Ga. 1994).  In *Smith*, the sheriff implemented a new policy providing for

compensatory time off in lieu of overtime pay. The plaintiff brought an action against the county and the sheriff challenging, *inter alia,* the compensatory time policy under the FLSA. The court granted summary judgment in favor of the county because the plaintiff never expressed to the sheriff or any of his higher ranking officers an unwillingness to accept compensatory time off in lieu of overtime pay. *Smith,* 859 F. Supp. at 1509; *see* 29 C.F.R. § 553.23(c).

Also instructive is the decision in *Banks v. City of Springfield,* 959 F.Supp. 972 (C.D. Ill. 1997). In *Banks,* police cadets brought suit under the FLSA, asserting they were forced to accept compensatory time in lieu of overtime payment. The court rejected plaintiff's contention and granted summary judgment in favor of the city, holding plaintiffs were estopped from challenging the use of compensatory time because none of the plaintiffs had requested cash overtime payments as was their choice under the city's policy. *Banks,* 959 F. Supp. at 979. In reaching this conclusion, the court in *Banks* noted at least one cadet in the subsequent class had requested and received overtime payment instead of compensatory time pursuant to the city's policy.

In the instant case, as in *Baker* and *Ariens,* plaintiffs did not refuse any paychecks. Moreover, as in *Smith,* neither plaintiff in the case at bar expressed to the Commissioners, Director Marianne Barnhart, or a higher-ranking supervisor an unwillingness to accept compensatory time off in lieu of overtime pay during the statutory period.

In addition, defendant has come forward with evidence showing that during the statutory time period overtime payment was available to employees by filling out a form. Auten maintains supervisors told him overtime payment was not available. Auten does

not, however, indicate when the supervisors made these representations. During the last several years of Auten's employment, overtime payment was available pursuant to the collective bargaining agreement, the Employee Handbook, and the Work Rules. Hence, as in *Banks,* neither plaintiff in the instant case properly requested overtime pay instead of compensatory time off during the statutory period, although they had the option to do so under the policy then in place.

The Court finds as a matter of law that plaintiffs failed adequately to express an unwillingness to accept compensatory time off in lieu of overtime pay, and in fact expressed a willingness to accept compensatory time by accepting their paychecks and continuing to work overtime hours. Therefore, an agreement or understanding existed between plaintiffs and their employer that compensatory time off would be given in lieu of overtime payment. Moreover, the Court finds as a matter of law that during the statutory period, overtime payment was, in fact, available to plaintiffs, but plaintiffs simply failed to take advantage of it.

For the above reasons, the Court holds defendants provided plaintiffs compensatory time off in lieu of overtime payment within the requirements of 29 U.S.C. §207(o) and 29 C.F.R. § 553.23(c). Defendants are therefore entitled to summary judgment in their favor with respect to plaintiffs' FLSA and MFWSA overtime claims.

## B. Retaliation

Plaintiff Auten also asserts defendants violated the FLSA by retaliating against him for complaining about receiving compensatory time off in lieu of overtime pay. Defendants argue plaintiff is unable to establish a *prima facie* case of retaliation, and, in any event, cannot show defendants' proffered reason for terminating plaintiff's

employment is a mere pretext for retaliation.

> The FSLA provides in pertinent part that it shall be unlawful for any person:

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3). Courts apply the burden shifting analysis of *McDonnell Douglas v. Green,* 411 U.S. 792 (1973) to FLSA retaliation claims. *Adair v. Charter County of Wayne,* 452 F.3d 482,     , 2006 WL 1699719, at * 5 (6th Cir. June 22, 2006). A plaintiff must prove the following elements to establish a *prima facie* case of retaliation under the FLSA:

> (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action.

*Id.* Once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its adverse employment action. *Id.* If the defendant provides a legitimate, non-retaliatory reason for its action, then the plaintiff must prove by a preponderance of the evidence the defendant's proffered reason is not the true reason for the adverse employment action, but is a mere pretext for illegal retaliation. *Id.* A plaintiff may demonstrate pretext by showing: (1) the proffered reason had no basis in fact; (2) the proffered reason did not actually motivate the defendant's adverse action; or (3) the defendant's proffered reason was insufficient to motivate the adverse action. *Id.* at * 8.

Here, Auten alleges he complained to his immediate supervisor, Tom Byrne, and

his foreman, Jim Suver, about receiving compensatory time in lieu of overtime pay.[3]
It is undisputed Auten's employment was terminated. The Court finds Auten has
satisfied the first three elements of a *prima facie* case of retaliation.

Defendants argue Auten is unable to establish the fourth *prima facie* element, a
causal connection between the protected activity and the adverse employment action.
The Court agrees. First, Auten has not attempted to establish temporal proximity
between his complaints about overtime and his termination. Second, Auten has not
adduced evidence that the decision-makers were aware of his complaints. Auten does
not submit any other evidence to establish a causal connection. In these
circumstances, an inference of causal connection does not arise.

Although the above ruling is dispositive of Auten's retaliation claim, the Court will
nevertheless examine pretext as an alternative basis for its decision. Auten does not
dispute he received a five-day suspension in the Summer of 2003 for being intoxicated
at work. Nor does he dispute the collective bargaining agreement established the next
step in the progressive discipline policy was removal.

Auten argues a genuine issue of material fact exists as to defendants' motives
for terminating his employment. In support of this assertion, Auten refers to his own
affidavit, the deposition testimony of union vice president Rick Erbe, and the affidavit of
Carrie Workman. Auten's affidavit states he was terminated after complaining about
having to perform personal work for Commissioner Stokes. Auten Aff. ¶ 21. Auten's
affidavit does not otherwise attempt to cast doubt on the bases for his termination.

---

[3] The Sixth Circuit Court of Appeals has held that informal complaints trigger the anti-retaliation
provisions of the FLSA. *Moore v. Freeman,* 355 F.3d 558, 562 (6th Cir. 2004).

Whether Commissioner Stokes was aware that Auten complained about performing personal work for him is not relevant to Auten's retaliation claim. To constitute retaliation, Commissioner Stokes must have been motivated by Auten's complaints about the *overtime policy*. That Auten may have complained about having to perform outside work for Commissioner Stokes is simply not probative of retaliatory animus.

Erbe stated his personal opinion that termination was too severe a penalty for the altercations. Erbe Dep. at 22. In her affidavit, Workman states she was not fearful for her safety during the August 29, 2003 incident. Workman Aff. ¶ 8. She also characterized defendants' discipline of Auten as unfair. Workman Aff. ¶ 6. The Court finds the evidentiary materials upon which Auten relies contain no more than a scintilla of evidence casting doubt on defendants' stated reason for terminating Auten's employment.

The Court concludes defendants have articulated legitimate, non-retaliatory reasons for removing Auten from his employment. The Court further finds as a matter of law that Auten cannot establish defendants' stated reasons are a mere pretext for retaliation. For this additional reason, defendants are entitled to summary judgment in their favor with respect to Auten's retaliation claim.

## IV. Disposition

Based on the above, the Court **GRANTS** defendants' summary judgment motion (Doc. 38).

The Clerk shall enter final judgment in favor of defendants, and against plaintiffs, dismissing this action in its entirety with prejudice.

The Clerk shall remove this case from the Court's pending cases and motions

lists.

The Clerk shall remove Doc. 38 from the Court's pending CJRA motions list.

**IT IS SO ORDERED.**

MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT